## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:06CR384 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| JAMES A. HOWARD, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant James A. Howard (Howard) (Filing No. 32). Howard is charged in the Indictment with a conspiracy to distribute and possess with intent to distribute cocaine base ("crack" cocaine), during the period of January 1, 2006 through December 11, 2006 (Count I) in violation of 21 U.S.C. § 846; the possession with intent to distribute crack cocaine on May 15, 2006 (Count II), in violation of 21 U.S.C. § 841(a)(1); the distribution of crack cocaine on February 13, 2006 (Count V) in violation of 21 U.S.C. § 841(a)(1); the use and carrying of firearms on May 15, 2006, during a drug trafficking offense (Count III) in violation of 18 U.S.C. § 924(c); a criminal forfeiture (Count IV) in violation of 21 U.S.C. § 853 regarding various currency seized from co-defendants during the period of the conspiracy; and the forfeiture of various firearms involved and used during the conspiracy (Count VI) in violation of 18 U.S.C. § 924(d).

Howard requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court found Howard was not entitled to a *Franks* hearing since he failed to make a preliminary showing of false statements in the search warrant affidavits. Howard's request for a *Franks* hearing was denied prior to the hearing on the motion to suppress (TR. 11).

Howard seeks to suppress: (1) evidence obtained during a traffic stop by officers of the Omaha Police Department (OPD) on May 8, 2006, along with various statements allegedly made by Howard; (2) evidence seized during the execution of a state court authorized search warrant at 4304 N. 48th Street, Omaha, Nebraska, on May 15, 2006, along with various statements by Howard; (3) evidence of Howard's arrest by OPD on June 15, 2006; and (4) evidence seized and statements made during a traffic stop by OPD on

July 2, 2006. In his motion to suppress, Howard also sought to suppress evidence of an OPD October 1, 2005 arrest of Howard for carrying a concealed weapon, to suppress evidence of an alleged sale of crack cocaine by Howard on February 13, 2006, and to suppress evidence obtained from a traffic stop of Howard by OPD on February 26, 2006. Howard does not persist in these complaints and agrees that the issues as raised in his motion regarding these latter incidents are moot (TR. 12-13).

The court held hearings on the motion on February 21 and 26, 2007. Howard was present for the hearings along with his retained counsel, Susan M. Bazis. The United States was represented by Assistant U.S. Attorney Robert F. Cryne and Joshua Carter, a senior law student at Creighton Law School. The court heard the testimony of OPD Officers Joseph Baudler (Officer Baudler) and Eugene Watson (Officer Watson). The court also heard the testimony of Jameca Howard (Ms. Howard). The court received into evidence a copy of the application and affidavit, search warrant and return for the main floor of 4304 North 48th Street (Exhibit 1); a copy of the application and affidavit, search warrant and return for the upper floor of 4304 North 48th Street (Exhibit 2); an OPD Rights Advisory Form (Exhibit 3); a copy of an OPD report of a witness statement of November 21, 2006 (Exhibit 101 - Sealed); and a copy of an OPD report of a witness statement of January 22, 2006 (Exhibit 102 - Sealed). A transcript (TR.) of the February 21 and 26, 2006 hearings was filed on March 7, 2007 (Filing No. 55). The parties requested and were allowed to file post-hearing briefs. The government filed a supplemental brief on March 14, 2007 (Filing No. 59). Howard filed a supplemental brief on March 20, 2007 (Filing No. 68), at which time the motion was deemed submitted.

### FINDINGS OF FACT

Officer Watson is a detective with the OPD Gang Intelligence Unit which assists other OPD investigative units and uniform patrol relating to gang-related crimes (TR. 19). On May 8, 2006, Officer Watson was familiar with Howard through prior intelligence and prior arrests (TR. 20). On May 8, 2006, Officer Watson observed Howard commit a traffic violation while driving a vehicle and making a turn without signaling his intent in the vicinity of 48th and Boyd Streets in Omaha (TR. 20). Officer Watson stopped the vehicle and

approached Howard in the driver's seat (TR. 21). Officer Watson observed, in Howard's front pocket, a bulge with a white cap and a red bottle partially sticking out of the pocket (TR. 21). Officer Watson recognized the bottle to be a bottle of "lean," which is a street name for codeine cough syrup containing a controlled narcotic (TR. 21; 31). Officer Watson testified through his training and experience that "lean" is a commonly abused controlled substance in Omaha (TR. 22). After Officer Watson asked Howard if the bottle was "lean" and Howard stated that it was, Howard was placed under arrest (TR. 22). Howard's person was searched incident to the arrest and Officer Watson found marihuana on Howard (TR. 23). Howard was transported to Central Police Headquarters (TR. 23). During the ride to Central, Howard told Officer Watson that he (Howard) just smokes "weed" and drinks "lean" (TR. 23). Officer Watson testified Howard was not advised of his *Miranda* rights during the stop or during transport (TR. 32). While the officers told Howard they were in the area because of complaints about gang activity and shots being fired, Howard's statement was not made in response to any questioning by the police officers (TR. 23; 33).

On May 15, 2006, Officer Baudler executed two search warrants on an apartment building located at 4304 North 48th Street in Omaha (TR. 38; Exhibits 1 and 2). The search warrants were for two of the four apartments in the building, an upstairs apartment and the main floor apartment (Exhibits 1 and 2; TR. 51). Officer Baudler has been an officer with the OPD approximately 18 years (TR. 38). During the execution of the search warrants, one individual, Herbert Renfrow (Renfrow), was located in the upstairs apartment and thirteen people were located in the main floor apartment (TR. 38). Howard and his co-defendants were among the people found on the main floor (TR. 39). Howard was placed under arrest and advised of his *Miranda* rights (TR. 39, 74-75; Exhibit 3). Howard did not appear intoxicated, but did appear to understand the questions posed to him and responded appropriately (TR. 39-40). The officer did not make any promises or threats to induce a statement by Howard (TR. 40). Howard had crack cocaine on his person and stated it was for his personal use (TR. 40, 59-61). Howard stated he lived at an address on Seward Street (TR. 41). Howard denied he lived in the main floor apartment at 4304 North 48th Street and made no claim to any other portion of the building (TR. 41).

However, Howard stated he had a rash on his leg from sleeping on a cot in the main floor apartment at 4304 North 48th Street (TR. 41).  Howard had a key to the main floor apartment, but did not have a key to the basement door on his person (TR. 53).

Officer Baudler searched the basement area of 4304 North 48th Street after officers forced open the basement door (TR. 41-42).  Officer Baudler received information from Renfrow that there was no one living in the basement and no one should be down there (TR. 42, 52).  Renfrow stated he was the manager of the building, but did not have a key to the basement because his key had been stolen (TR. 42, 52-53).  The basement was accessible by a door located in a common stairwell (TR. 43).  The basement door was locked prior to the officers' forced entry (TR. 52).  The basement contained a washer, dryer and furnace area which appeared to be a common area for the other apartments (TR. 43-44).  Officers found stolen weapons, ammunition, bottles of codeine, digital scales and plastic bags containing crack cocaine in the ceiling above the washer/dryer area (TR. 45, 54).  The basement also had two rooms under construction, which were, at that time, open and unoccupied (TR. 44).

On June 15, 2006, while on patrol in the area, Officer Baudler observed Howard standing on the porch at 4815 Boyd (TR. 45).  Upon sight of the officers, Howard fled into apartment 3 of the building (TR. 45).  The officers followed and knocked at the door of the apartment (TR. 45).  An older gentlemen opened the door and the officers saw Howard sitting on the sofa (TR. 45).  The officers placed Howard under arrest, without incident, for selling crack cocaine to a CI on February 13, 2006 (TR. 46, 50-51).  Officer Baudler had been involved with the February controlled buy (TR. 46).  Howard was searched and he had two cellular telephones, some marijuana and $135 cash on his person (TR. 46).  Howard did not make any statements to officers (TR. 46-47).

On July 2, 2006, Officer Baudler observed a vehicle drive through a red light northbound on 48th Street as he made a right-hand turn onto Ames Street (TR. 47, 103).  The vehicle slowed, but did not make a complete stop although the traffic light was red (TR. 103).  Officer Baudler observed the vehicle when Officer Baudler was traveling westbound on Ames, with a green traffic signal (TR. 103).  Officer Baudler made a U-turn, followed the vehicle briefly and conducted a traffic stop (TR. 47, 106).  Officer Baudler did not know the

4

driver was Howard until after the vehicle was stopped (TR. 109). Officer Baudler had not seen Howard driving the type of vehicle, a Jeep Cherokee, before the stop on July 2, 2006 (TR. 110). Officer Baudler saw what appeared to be small white crumbs of crack cocaine on the passenger seat (TR. 47, 68). The substance field-tested positive for crack cocaine (TR. 47). Howard was placed under arrest and advised of his *Miranda* rights (TR. 48-49). After taking Howard to Central Station officers swabbed Howard's hands to test for cocaine residue (TR. 48). In response to questioning, Howard stated that three days earlier he had smoked "primo," which is crack cocaine and marijuana together (TR. 48-49, 71). Officer Baudler did not make any promises or threats to induce Howard to make a statement (TR. 49). Howard did not appear intoxicated, but did appear to understand the questions posed to him and responded appropriately (TR. 49-50).

Howard's sister, Jameca Howard, was driving a vehicle behind Howard on July 2, 2006, before Howard was stopped by Officer Baudler (TR. 87-88). Jameca Howard explained Howard was going to drop off the vehicle he was driving to another location (TR. 88). Jameca Howard and Howard were both traveling northbound on 48th Street from Boyd to Ames Street (TR. 89). Jameca Howard testified there was a lot of traffic on Ames Street and both she and Howard made complete stops before turning eastbound onto Ames (TR. 89). Otherwise, Jameca Howard stated, oncoming traffic from Ames Street would have struck their vehicles (TR. 89). Jameca Howard observed a marked police car, which was initially going in the opposite direction, make a U-turn to follow Howard (TR. 90).

In an OPD report dated November 21, 2006, Officer James P. Paul (Officer Paul) received information during a proffer interview with a cooperating individual that Howard had a basement full of guns at Howard's house near 48th and Boyd (Exhibit 101). The report stated the witness dealt with Howard after Howard's house was raided and for at least the period of time eight to nine months prior to the November interview (Exhibit 101). Further, in an OPD report dated January 22, 2007, Officer Paul received information during a proffer interview with another cooperating individual that he/she had seen certain weapons in the basement at Howard's place (Exhibit 102). The witness stated the door to the basement was always locked but that Howard had a key (Exhibit 102). The witness

dealt with Howard over the course of three to four months prior to the raid in May 2005 (Exhibit 102).

## CONCLUSION OF LAW

**A.    Howard's Request for a *Franks* Hearing**

In *Franks v. Delaware*, the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant or wire interception order. The Court held that, if the government intentionally includes material false statements in the application or affidavit or includes material false statements with a reckless disregard for the truth that is the legal equivalent of intentional falsehood, a court reviewing a motion to suppress must "set aside those statements and then review the remaining portions of the affidavits to see if what remains [is] sufficient to establish probable cause." *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir. 1986).  As stated by the Eighth Circuit in *United States v. Falls*, 34 F.3d 674 (8th Cir. 1994):

> The defendant may challenge a facially sufficient affidavit by showing that the facts included in the affidavit are false or were made in reckless disregard of the truth, or that facts were omitted with the intent to mislead or in reckless disregard of whether it was misleading.  The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the remaining contents of the affidavit are sufficient to establish probable cause.  If the remaining contents are insufficient to establish probable cause, the warrant must be voided and the fruits of the search suppressed.

*Id.* at 681 (internal citations omitted).

To succeed in a *Franks*-type challenge to the validity of a search warrant, a defendant bears the burden to establish by a preponderance of the evidence that the affiant, either knowingly and intentionally, or with reckless disregard of the truth, included a false statement within the warrant affidavit.  *Franks*, 438 U.S. at 155-56; *United States v. Williams*, 981 F.2d 1003, 1005 (8th Cir. 1992).  The same analysis applies to omissions of fact.  The defendant must show that the facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading.  *United States v.*

6

*Humphreys*, 982 F.2d 254, 258 n.2 (8th Cir. 1992); *United States v. Reivich*, 793 F.2d 957, 960-61 (8th Cir. 1986); *United States v. Lueth*, 807 F.2d 719, 726 (8th Cir. 1986). The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the affidavit's remaining contents are sufficient to establish probable cause. **See** *Franks*, 438 U.S. at 156.

In order to be entitled to a *Franks* hearing, the Eighth Circuit has held that the defendant must satisfy two requirements:

> First, the defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the affidavit. The substantiality requirement is not lightly met. Allegations of negligence or innocent mistake are insufficient. Second, the allegedly false statements must be necessary to the finding of probable cause.

*United States v. Schenk*, 983 F.2d 876, 879 (8th Cir. 1993) (internal citations omitted). If these requirements are not met, no *Franks* hearing is required. *United States v. Williams*, 477 F.3d 554 (8th Cir. 2007).

With the above principles in mind, the court has reviewed Howard's request for a *Franks* hearing. Howard challenges statements in the search warrant affidavit in the following aspects:

1.     The affidavit fails to state the controlled substance found on Howard during the May 8, 2006 traffic stop was cough syrup;

2.     Some information in the affidavit was stale; and

3.     The information regarding control of the same building was inconsistent.

Even if one assumes, *arguendo*, the information complained of is false or misleading, there is no evidence presented by Howard to show the officers knew about the inaccuracy or intentionally or recklessly omitted information from the affidavit for the search warrants. Furthermore, the information complained of does not encompass the principle issues supporting the searches. Rather, the issue was whether the affidavits contained information supplying probable cause for either search. Even if the affidavits were inaccurate as argued by Howard, they contain substantial evidence of probable cause to believe the apartments listed would contain evidence of the use and sales of illegal drugs

from the apartments. Accordingly, Howard's attempt to introduce evidence through the mechanism of a *Franks* hearing is without merit. Howard's motion for a *Franks* hearing was denied at the hearing. However, the time to object to the court's ruling shall commence from the date of this Report and Recommendation.

## B.    Standing

To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir. 2006). The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); **see also** *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *United States v. Barragan*, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

The Eighth Circuit has recognized that:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (internal citations omitted). "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Barragan*, 379 F.3d at 529. Therefore, the court "must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256. The Eighth Circuit has explained:

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to

8

regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Id.*

The government challenges Howard's standing with regard to the entry and search of the basement.[1] Howard argues there are sufficient facts in the record to show that the door to the basement was kept locked, Howard had a key to the basement area, the apartment manager did not have key, the basement was not a common area shared by the other tenants, and Howard had dominion and control over the basement. In contrast, the government contends the basement was either a common area accessible by many or part of the curtilage of main floor apartment. Additionally, the government contends Howard did not reside, nor was he found in the basement, and Howard denied any interest in the basement and/or abandoned the items found there.

The court finds, based on the facts adduced during the hearing, that the basement was not a common area precluding an individual expectation of privacy. **See *United States v. McCaster***, 193 F.3d 930, 933 (8th Cir. 1999) (noting rejection of the notion of a generalized expectation of privacy in the common areas of an apartment building). Although the basement door was in a common area shared by more than one apartment, the door was kept locked. The basement area was under construction and the building manager stated no one lived or was allowed in the basement. While the building manager was allowed access to the basement by use of a key, he told officers his key had been stolen. The fact that police officers were able to enter the basement without a key by forcing the door, does not stand to reason that others, including "animals, children, scavengers, snoops, and other members of the public" had common access to the area, as urged by the government.

The evidence in the record does support a subjective expectation of privacy in the basement area. A witness observed Howard with a key to the basement and entering the

---

[1] The government concedes Howard has shown standing sufficient to contest the execution of the search warrant in the main floor apartment (TR. 119).

basement to gain access to items kept there by Howard.  The evidence suggests Howard had the practical ability to exclude others from the basement by keeping the door locked.

However, the evidence does not support Howard had an objective reasonable expectation of privacy in the basement area.  **See *United States v. Davis***, 103 F.3d 660, 671 (8th Cir. 1996) (defendant without standing where he was not a resident or guest of apartment and did not claim ownership of box seized); ***United States v. Wiley***, 847 F.2d 480, 481 (8th Cir. 1988) (defendant lacked standing when he had no legitimate access to premise without presence of owner and had no personal belongings stored there); ***United States v. Nabors***, 761 F.2d 465 (8th Cir.1985) (defendant lacked standing although friend of homeowner, visitor to home several days a week and present at time of search because he lacked unencumbered access to the home and did he have permission to enter the home alone).  There is no evidence Howard had a legitimate interest in the property by virtue of ownership or permissive use by the owner.  The building manager stated no one was allowed in the basement.  Accordingly, there is no evidence Howard had unencumbered access to the basement or even authorization to enter the basement.  The owner of the property could likely have changed the lock to the door at any time, thus barring Howard's use of the basement.  Howard does not, himself, claim to have had any belongings in the basement.  Howard was not in the basement at the time of the search. Accordingly, the court finds Howard failed to show he has standing and thus lacks standing to challenge the warrantless search of the basement at 4304 North 48th Street.  Therefore, Howard's motion to suppress should be denied with respect to any evidence discovered in the basement on May 15, 2006.


**C.     Sufficiency of the Affidavit**

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place.  2 Wayne R. LaFave, ***Search and Seizure***, § 3.7(d) at 412 (4th ed. 2004).  As the Supreme Court stated in ***Illinois v. Gates***, 462 U.S. 213, 238 (1983):  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is

a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . . Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). **See** *Gates*, 462 U.S. at 238. The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988), **citing** *United States v. Ventresca*, 380 U.S. 102, 108 (1965). "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910 (1979).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added). **See also** *United States v. Spinosa*, 982 F.2d 620 (1st Cir. 1992) ("The affidavit must be 'viewed in its entirety,' and 'must be given a common-sense and realistic, rather than a hyper technical interpretation.'").

"Probable cause must exist at the time of the issuance of the warrant, not merely at some earlier time." *LaMorie*, 100 F.3d at 554. However, since there is no bright-line test for determining whether the information in an affidavit is stale, the statements in an affidavit

must be judged by the particular circumstances of the case. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Where continuing criminal activity is suspected as was in this case, the passage of time is less important. *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995).

The defendant argues the same issues supporting his request for a *Franks* hearing detract from the sufficiency of the affidavits in terms of probable cause. As stated above, there is no evidence the information was inaccurate. Further, the affidavit states a warrant was then outstanding for someone recently observed inside the main floor apartment and the person named as controlling the premises was inconsequential to the other information.

In addition, Howard contends the affidavit relies on the speculative and unsubstantiated statements of an informant as being insufficient to support probable cause. However, the statements of a reliable confidential informant are themselves sufficient to support probable cause. *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). The Eighth Circuit has stated: "[t]he core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *Williams*, 477 F.3d at 559-60 (citation omitted). Information provided by an informant may be sufficiently reliable to support a probable cause where the informant has a track record of supplying reliable information, or the information is corroborated by independent evidence. *Id.* "It is well established that a statement in an affidavit that an informant has provided reliable information in the past is sufficient to establish the reliability or credibility of the informant." *United States v. Sumpter*, 669 F.2d 1215, 1220 (8th Cir. 1982) (citing *United States v. Schmidt*, 662 F.2d 498, 502 (8th Cir. 1981)). Here the affidavit contains averments of the informants past reliability and independent corroboration of some of the information. Accordingly, the reliability of the informant was established and supports the finding of probable cause. The court finds the information was not stale and there was sufficient probable cause for issuance of the search warrants for a nighttime search.

**D.    *Leon* Good Faith Exception**

Even assuming *arguendo*, that probable cause was lacking in sufficiency or freshness, the ***Leon*** good faith exception would allow the admissibility of the evidence seized.  **See *United States v. Leon***, 468 U.S. 897 (1984).  In ***Leon***, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" ***LaMorie***, 100 F.3d at 555.  There are four exceptions to this good faith rule:

> (1)  where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2)  where the issuing officer "wholly abandoned his judicial role;" (3)  where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4)  where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

***Id.*** (internal citations omitted).

None of those exceptions were present in this case.  Accordingly, the officers could rely upon the search warrants as to the upstairs and main floor apartments and Howard's motion to suppress the results of the execution of these search warrants should be denied.


**E.    May 8, 2006 Traffic Stop[2]**

Howard contends he did not commit a traffic violation warranting the traffic stop on May 8, 2006.  Howard further argues any statements he made were involuntary and based on improper custodial questioning of police officers.   The government provided uncontroverted evidence during the hearing that Officer Watson observed Howard commit a traffic violation while driving a vehicle by making a turn without signaling his intent in the vicinity of 48th and Boyd Streets in Omaha (TR. 20).   Additionally, the government contends the bottle of cough syrup, a controlled substance, was observed by officers in

---

[2]  Howard withdrew his motion to suppress with regard to a traffic stop which occurred on February 26, 2007 (TR. 12-13).

plain sight and Howard's statements were voluntarily made, rather than the product of police questioning.

### 1. Traffic Stop

The Eighth Circuit has "repeatedly held that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003) (internal quotation and citations omitted). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law. *Mallari*, 334 F.3d at 766 (**citing** *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) and *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken, but objectively reasonable belief that a traffic violation occurred supported traffic stop)). Officer Watson observed what he reasonably believed was a traffic violation giving Officer Watson probable cause to stop Howard's vehicle on May 8, 2006.

### 2. Statements

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

One of the principal factors is whether or not the defendant was in custody at the time of the statements. "A consensual encounter does not amount to a custodial situation requiring the administration of *Miranda* warnings." *United States v. Woods*, 213 F.3d 1021, 1023 (8th Cir. 2000). A *Miranda* warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999) (**citing**

*Miranda v. Arizona*, 384 U.S. 436 (1966)).  "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom in any significant way."  *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990).  "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Thatsaphone v. Weber*, 137 F.3d 1041, 1044 (8th Cir. 1998) (**citing Stansbury v. California**, 511 U.S. 318, 322 (1994)).  The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]."  *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (**citing Rhode Island v. Innis**, 446 U.S. 291, 300-01 (1980)).  Failure to advise an in-custodial defendant of such rights will render statements inadmissible made by such a defendant as a result of police interrogation.

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and the issuing of a citation.  *United States v. $404,905.00*, 182 F.3d 643, 647 (8th Cir. 1999); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether the police officer may search the vehicle.  *$404,905.00*, 182 F.3d at 647; *United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999).  The police officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made by the police officer regarding illegal drug use, and divergent information from the passengers.  *$404,905.00*, 182 F.3d at 647; *Allegree*, 175 F.3d at 650-51.

In determining whether a defendant made statements voluntarily, the court must also determine if the accused was coerced or his will was overborne.  *United States v. Wilson*, 787 F.2d 375, 380-81 (8th Cir. 1986).  The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused.  *Schneckloth*, 412 U.S. at 225-26.

Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. ***Connelly***, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).

Howard's initial statement to Officer Watson that the bottle in his pocket was "lean" was made before Howard was in custody. Shortly after the stop, Officer Watson observed, in Howard's front pocket, a bulge with a white cap and a red bottle partially sticking out of the pocket (TR. 21). Officer Watson recognized the bottle to be a bottle of "lean," which is a street name for codeine cough syrup containing a controlled narcotic (TR. 21; 31). In response to a question about the bottle, Howard confirmed it was "lean" (TR. 22). After the officer confirmed the substance was a controlled substance, Howard was placed under arrest (TR. 22). Based on the nature of the traffic stop and Officer Watson's immediate recognition of the bottle in Howard's pocket as a controlled substance, Howard's statement was not in response to custodial interrogation and need not be suppressed.

During transportation to Central Police Headquarters and prior to a ***Miranda*** advisement, the officers told Howard they were in the area because of complaints about gang activity and shots being fired (TR. 23). In response to the comments by the officers Howard told Officer Watson that he (Howard) just smokes "weed" and drinks "lean" (TR. 23). Clearly Howard was in custody at the time of these statements. Accordingly, the court must determine if the statements were made in response to interrogation.

"Interrogation in the ***Miranda*** context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" ***United States v. Briones***, 390 F.3d 610, 612 (8th Cir. 2004) (**quoting *Rhode Island v. Innis***, 446 U.S. 291, 301 (1980)). "***Miranda*** does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." ***Butzin v. Wood***, 886 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted). In ***Briones***, the defendant was standing in the state patrol lobby before being transported to a detention center, when officers led

16

Briones' girlfriend past Briones and out of the building.  After seeing his girlfriend, Briones "blurted out that she had nothing to do with the drugs for they were his."  *Id.* at 611.

The court finds the statements made by Howard were not in response to any interrogation by officers.  As in ***Briones***, no question was posed to the defendant in this case when he began to make statements to Officer Watson.  Additionally, Howard's statements were made in response to the police officers explaining their presence in the area.  Further, the court will not find statements are the product of interrogation or its functional equivalent when the discovery of contraband, rather than police coercion, induces the incriminating statements.  **See *United States v. Hawkins***, 102 F.3d 973, 975-76 (8th Cir. 1996).  Accordingly, the court finds Howard's May 8, 2006 statements were voluntarily made.  Howard's motion to suppress such statements should be denied.

## F.    May 15, 2006 Statements

Howard argues the statements he made to officers after the execution of search warrants on an apartment building located at 4304 North 48th Street in Omaha, were involuntary.  Howard was placed under arrest and taken to Central Station, where he was ***Mirandized***, questioned and strip searched.  Howard contends any questioning during or after the strip search about why Howard had a bandage on his leg was a deceptive tactic used to illicit Howard's statement about sleeping on a cot at the 48th Street apartment.  Additionally, Howard alleges Officer Baudler left the room for some period and did not re-***Mirandize*** Howard upon return before re-initiating questioning about the bandage.

There is no question Howard was subjected to custodial interrogation during the evening of May 15, 2006.  Under the totality of the circumstances, the court finds the brief cessation of police contact and question posed about the bandage does not provide any evidence Howard's will was overborne to induce statements about Howard's sleeping arrangements.  Accordingly, Howard's motion to suppress his May 15, 2006 statements should be denied.

G.    **June 15, 2006 Arrest**

Howard contends his warrantless arrest on June 15, 2006 was a violation of his constitutional rights and any evidence seized during the arrest should be suppressed. The Fourth Amendment requires an arrest be made with a valid arrest warrant or that a warrantless arrest be supported by probable cause. See ***U.S. Const. amend. IV.***; ***United States v. Oropesa***, 316 F.3d 762, 768 (8th Cir. 2003). The government has the burden to prove either a valid arrest warrant or probable cause existed at the time of the arrest. See ***United States v. Andrews***, 454 F.3d 919, 922 (8th Cir. 2006).

"The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." ***Florida v. White***, 526 U.S. 559, 565 (1999). "Probable cause exists when, at the time of the arrest, 'the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested.'" ***United States v. Martinez***, 462 F.3d 903, 908 (8th Cir. 2006) (**quoting** ***United States v. Kelly***, 329 F.3d 624, 628 (8th Cir. 2003)). Therefore, whether probable cause existed for an arrest must be determined at the time of the arrest. "Probable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense.'" ***United States v. Mendoza***, 421 F.3d 663, 667 (8th Cir. 2005) (**quoting** ***United States v. Cabrera-Reynoso***, 195 F.3d 1029, 1031 (8th Cir. 1999) (citation and internal quotations omitted) and **citing** ***United States v. Amaya***, 52 F.3d 172, 174 (8th Cir. 1995) (totality of the circumstances); ***United States v. Morgan***, 997 F.2d 433, 435 (8th Cir. 1993) (court may consider collective knowledge)).

It is clear on the record that no valid arrest warrant existed at the time of arrest. However, Officer Baudler who placed Howard under arrest had previously observed Howard selling crack cocaine to an informant (TR. 46, 50-51). Officer Baudler's observation of Howard committing a felony provided probable cause for the arrest. Further, on June 15, 2006, while on patrol in the area, Officer Baudler observed Howard standing on the porch at 4815 Boyd and followed him into an apartment building to make the arrest (TR. 45). There is no evidence the officers violated the defendant's rights upon entry of the

18

building.  Accordingly, the court finds Howard's June 15, 2006 warrantless arrest was based on probable cause when made.  Howard's motion to suppress evidence related to the arrest should be denied.

### H.    July 2, 2006 Traffic Stop

Howard contends he did not commit a traffic violation warranting the traffic stop on July 2, 2006.  Howard further argues any statements he made were involuntary because he was high on marijuana at the time of the stop.  The government contends the stop was based on Officer Baudler's observation of a traffic violation and any subsequent statements were voluntary.

### 1.    Traffic Stop

Although there is contradictory evidence about whether Howard failed to make a complete stop at a traffic light as he made a right-hand turn from 48th Street onto Ames Street, the contradiction is one without legal significance in this case.  However, to the extent a credibility determination is needed the court finds Officer Baudler more credible than Jameca Howard.  This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness and consistency with other testimony.  Furthermore, and most importantly, each witness viewed Howard's approach to the intersection from a difference vantage.  Jameca Howard was directly behind Howard, while Officer Baudler was driving perpendicular to Howard's vehicle.

An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law. *Mallari*, 334 F.3d at 766 (**citing** *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) and *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken, but objectively reasonable belief  that a traffic violation occurred supported traffic stop)).  Under these circumstances and based on the testimony, the court credits Officer Baudler's objectively reasonable belief that Howard committed a traffic infraction, even if Officer Baudler was mistaken.  Officer Baudler's observation provided him with probable cause to

stop Howard's vehicle on July 2, 2006.  There is no evidence Officer Baudler had an improper motive to stop the vehicle or that he knew Howard was the driver before stopping the vehicle.

### 2.    Statements

Howard was placed under arrest at the scene of the traffic stop after Officer Baudler saw what appeared to be small white crumbs of crack cocaine on the passenger seat (TR. 47, 68).  Howard was transported to Central Station and advised of his ***Miranda*** rights (TR. 48-49).  In response to questioning, Howard stated that three days earlier he had smoked "primo," which is crack cocaine and marijuana together (TR. 48-49, 71).  Howard also stated he had smoked marijuana that day.  Officer Baudler did not make any promises or threats to induce Howard to make a statement (TR. 49).  Howard did not appear intoxicated, but did appear to understand the questions posed to him  and responded appropriately (TR. 49-50).

Although Howard may have ingested marijuana before he was arrested, such consumption does not necessarily render his statements involuntary.  "[T]he mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary.  In each case, '[t]he question is one of mental awareness so that the act of consent was the consensual act of one who knew what he [or she] was doing and had a reasonable appreciation of the nature and significance of his [or her] actions.'"  ***United States v. Rambo***, 789 F.2d 1289, 1297 (8th Cir. 1986) (consent to search voluntary despite use of cocaine) (internal citations omitted); **see *United States v. Annis***, 446 F.3d 852, 855 (8th Cir. 2006) (pain from injuries combined with methamphetamine withdrawal did not make voluntary or knowing waiver impossible when defendant did not appear to be in pain or suffering from withdrawal, made no complaints and answered questions reasonably); ***United States v. Makes Room***, 49 F.3d 410, 415 (8th Cir. 1995) (statement not involuntary due to intoxication when effects of alcohol had worn off and defendant did not appear intoxicated); ***United States v. Gipp***, 147 F.3d 680, 686 (8th Cir. 1998) (consent to search voluntary despite use of marijuana); ***United States v. Turner***, 157 F.3d 552, 555-56 (8th Cir. 1998) (valid waiver of rights despite intoxication with PCP); ***United States v.***

*Martin*, 28 F.3d 742, 746 (8th Cir. 1994) (statements voluntary despite use of methamphetamine).

Howard was coherent during the interview. Howard answered questions and spoke to Officer Baudler in a manner which indicated Howard knew what was going on and he was aware of his circumstances. There is no evidence of intimidation, coercion, or deception. Howard also had prior experience with law enforcement. For all of these reasons, the court finds Howard's statements to Officer Baudler on July 2, 2006, were voluntarily made. Howard's motion to suppress such statements should be denied. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Howard's motion to suppress (Filing No. 32) be denied in its entirety.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 9th day of May, 2007.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge